UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

| | |
|---|---|
| GERALD FLOOD,<br>a/k/a GERALD LEWIS FLOOD<br><br>    Plaintiff,<br><br>v.<br><br>FRANCISCO QUINTANA, Warden, et al.,<br><br>    Defendants. | Civil Action No. 5:16-CV-390-KKC<br><br><br>**MEMORANDUM OPINION<br>AND ORDER** |

\*\*\* \*\*\* \*\*\* \*\*\*

Plaintiff Gerald Flood is an inmate at the Federal Medical Center (FMC) in Lexington, Kentucky. Proceeding without an attorney, Flood filed a civil rights complaint pursuant to 28 U.S.C. § 1331 and the doctrine announced in *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971) alleging that the defendants violated his constitutional rights. [R. 1]. This matter is now before the Court for screening pursuant to 28 U.S.C. §§ 1915A and 1915(e)(2). For the reasons set forth below, the Court will dismiss Flood's complaint.

Flood alleges that he was enrolled in the Bureau of Prison's (BOP's) Residential Drug Abuse Program (RDAP) in the hopes of trying to obtain a reduction in his sentence of up to a one year pursuant to 18 U.S.C. § 3621(e)(2)(B). [R. 1 at 2]. Having completed most of the program, Flood was scheduled to be transferred to a Residential Re-Entry Center (RRC), also known as a halfway house, a necessary and last step to complete the RDAP. [R. 1 at 2-4]. Flood claims that just as he was about to be transferred to the halfway house, prison officials told him that he could not go because a prison doctor concluded that Flood was not properly treating his medical condition. [R. 1 at 2]. Specifically, the physician determined that Flood had not been self-

administering the subcutaneous injections required to treat his medical condition. As a result, the doctor decided that it would be medically advantageous for Flood to remain at the FMC so that his care could be provided by medical staff at the facility. [R. 1 at 3; R. 1-1 at 2]. As a result, prison officials kept Flood at FMC-Lexington instead of transferring him to a halfway house, preventing him from completing the RDAP. [R. 1 at 2-3; R. 1-1 at 1].

Flood disagreed with this decision and requested an administrative remedy from the Warden. [R. 1-1 at 3]. Flood emphasized that he had been approved for a transfer to the halfway house and argued that the doctor improperly overrode that decision. [R. 1-1 at 3]. Flood then claimed that he was the victim of "medical disability discrimination" and asked the Warden to send him to the halfway house as soon as possible so that he could complete the RDAP. [R. 1-1 at 3]. The Warden, however, denied Flood's request, stating that "[a]s part of the continued monitoring by medical staff, the Acting Clinic Director/Central Sector Clinical Specialty Consultant deemed that you are not medically cleared for placement in an RRC because you are not self-administering the sub-cutaneous injections required with your condition." [R. 1-1 at 2]. The Warden then said, "The continued care of your medical condition is best accomplished at a Medical Referral Center" like FMC-Lexington. [R. 1-1 at 2]. Thus, the Warden denied Flood's request for an administrative remedy. [R. 1-1 at 2].

Flood appealed the Warden's decision to the BOP's Mid-Atlantic Regional Office. [R. 1-1 at 1]. Flood again stressed that he had been approved for a transfer to the halfway house and argued that the doctor erroneously reversed that decision. [R. 1-1 at 1]. Flood then claimed for the first time that "this decision . . . evokes a case of racial discrimination" because there "are other races with conditions similar and worse than mine who were approved to transition to halfway house who are of a different race and the Acting Clinical Director/Central Sector Specialty

2

Consultant allowed them to transition. I can provide names if necessary to do so." [R. 1-1 at 1]. The Regional Director, however, denied Flood's appeal, stating that he was "not medically cleared to go to a RRC, and not medically cleared for home confinement as there is no approved release plan, and you have not been self-administering your injections." [R. 8-1 at 1].

Flood appealed to the BOP's Central Office. [R. 9-1 at 1]. Flood highlighted once more that he had been approved for a transfer to the halfway house before being told that he was not going. [R. 9-1 at 1]. Flood generically argued that this was "a form of discrimination" because "other inmates who are in far worse medical condition than I am have been allowed to go to home confinement." [R. 9-1 at 1]. The Central Office, however, denied Flood's appeal, stating that the Warden and Regional Director adequately addressed Flood's complaints, there was no indication staff acted contrary to policy, and there was no support for Flood's claim of discrimination. [R. 9-1 at 2].

Flood then filed his civil rights complaint with this Court. [R. 1]. In Flood's complaint, he states that he *was* self-administering his own injections and that prison officials were fully aware of his medical condition before they approved him for a transfer to the halfway house so that he could complete the RDAP. [R. 1 at 3]. Flood then says that, at the last minute, the doctor overrode that decision even though he was relying on medical information that was already known to prison officials. [R. 1 at 3]. Flood then makes two constitutional claims. First, Flood argues that he has "a right to be treated the same as similarly situated people" and that the doctor "revoked my privileges to go to transitional services and allowed individuals with medical conditions similar and worse than mine to go to [a] halfway house in violation of equal protection [as] there was no justifiable reason why I was not able to go to home confinement and/or the halfway house." [R. 1 at 4]. Second, Flood argues that his "right to due process was violated because I was deprived of

3

the liberty of knowing that my medical condition was a reason for me to not qualify for the one year reduction because when I was interviewed I was not told the truth." [R. 1 at 4]. Thus, it appears that Flood is arguing that prison officials violated his Fifth Amendment due process and equal protection rights by removing him from the RDAP and preventing him from being eligible for a sentence reduction. [R. 1 at 4]. Ultimately, Flood is seeking $1 million in damages, and he asks the Court to enter an order reprimanding the defendants. [R. 1 at 8].

Flood's removal from the RDAP did not deprive him of his due process rights. To be sure, the BOP must make available appropriate substance abuse treatment for each prisoner it determines has a treatable condition, *see* 18 U.S.C. §§ 3621(b), and, if that prisoner completes the treatment, he may be eligible for a reduction in his sentence of up to one year. *See* 18 U.S.C. § 3621(e)(2)(B). But that statute ultimately "leaves the decision of whether to grant early release to the discretion of the BOP." *Heard v. Quintana*, 184 F. Supp.3d 515, 519 (E.D. Ky. 2016) (citing *Lopez v. Davis*, 531 U.S. 230, 241 (2001)). Thus, even if "a prisoner successfully completes the RDAP, the BOP retains the discretion to deny early release." *Heard*, 184 F. Supp.3d at 519; *see also Orr v. Hawk*, 156 F.3d 651, 653 (6th Cir. 1998) (explaining that the BOP has "substantial discretion" under the statute). Given this "broad discretion left to the BOP, prisoners have no protected liberty or property interest in participating in a RDAP, and are not denied due process if they are removed from the program." *Heard*, 184 F. Supp.3d. at 519; *see also Sesi v. U.S. Bureau of Prisons*, 238 F.3d 423, 2000 WL 1827950, *2 (6th Cir. 2000) ("[T]here is no liberty interest in a reduced sentence, and § 3621(e)(2)(B) does not afford such an interest."). Cleary then, in this case, prison officials did not violate Flood's due process rights by determining that he was not adequately treating his medical condition and deciding that he could not safely go to a halfway house to complete the RDAP.

4

Flood's equal protection claim is also unavailing. While Flood suggests in his complaint that he is being treated differently from others who are similarly situated, he offers no clear factual allegations to support this legal conclusion. At most, he generically states in his complaint that prison officials "allowed individuals with medical conditions similar and worse than mine to go to [a] halfway house." [R. 1 at 4]. But Flood does not identify any of these individuals or describe their medical conditions with any specificity. And while Flood briefly alleged racial discrimination in his appeal to the BOP's Mid-Atlantic Regional Office, he asserts no such claim in his complaint. In short, even though this Court liberally construes Flood's pro se complaint, he has simply not alleged sufficient facts to state a claim upon which relief may be granted. *See Nali v. Ekman*, 355 F. App'x 909, 913 (6th Cir. 2009) ("[A]s the Supreme Court recently held, a complaint that includes conclusory allegations of discriminatory intent without additional supporting details does not sufficiently show that the pleader is entitled to relief." (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009))).

Accordingly, **IT IS ORDERED** that:

1. Flood's Due Process and Equal Protection claims are **DISMISSED** with prejudice.

2. This action is **DISMISSED** and **STRICKEN** from the Court's docket.

3. A corresponding judgment will be entered this date.

Dated June 30, 2017.

KAREN K. CALDWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY